PER CURIAM.
The defendants, Frank Kelly and Jose-phthal & Co., Inc. [collectively referred to as “Josephthal”], appeal from a non-final order denying their motion to stay pending arbitration. We have jurisdiction pursuant to rule 9.130(a)(3)(C)(v), Florida Rules of Appellate Procedure and reverse and remand for an evidentiary hearing.
Alberto Soberanes Azar and Sara Beatriz Albert Zepeda [collectively referred to as “the customers”] discussed opening an account at Josephthal with Frank Kelly, a Josephthal representative. Josephthal is a securities broker-dealer. The customers, residents of Mexico, do not speak or read English and spoke in Spanish with Kelly. The customers executed two identical contracts entitled “Signature Record and Cash Account Agreement” on June 9 and 10, 1988, respectively. The first page of these agreements reflects that the customers’ stated financial objectives are safety of principal and income. These agreements *98 also contain an arbitration clause (Par. 9).[1] During the next four months, the customers deposited $100,000.00 in their account at Josephthal and Kelly invested these sums in Ginnie Maes as agreed. In October 1988, Kelly telephoned the customers in Mexico and suggested a new investment program. Shortly thereafter, Kelly visited the customers at their Mexican residence and advised them that Josephthal required that they execute a new agreement in order to effectuate the new investments. Kelly assured the customers that the new agreement was identical in text and substance to the previous agreements they had signed. On October 2, 1988, the customers signed two additional contracts: a “Customer’s Margin Account and Loan Consent Agreement” and an “Options Agreement”. The “Loan Consent” portion of the “Margin Agreement” contains an arbitration clause identical to the clause contained in the Cash Account Agreements. However, the Options Agreement states that the customers’ investment objectives are growth, income and yield and authorizes Josephthal to engage in “[a]ny option transaction including uncovered writing” to achieve these objectives.
Two months later, the customers decided to withdraw $25,000.00 from the account. Although Kelly agreed to send the funds, they were never sent. In January 1989, after numerous attempts to obtain their money, the customers demanded a full reconciliation of their account. They were then told, for the first time, that their account had suffered trading losses in excess of $60,000.00. These losses were all suffered in the trading of options.
The customers filed an action against Josephthal alleging state and federal securities fraud, breach of fiduciary duty, negligence, common law fraud, fraud in the factum and breach of contract. In response, Josephthal filed a motion to stay the litigation pending resolution of the customers’ claims in arbitration. The customers presented several arguments in opposition to Josephthal’s motion. First, they argue that they are complaining only about the options transactions, and that since they were fraudulently induced to sign the options agreement, they are not, therefore, bound by the arbitration clauses. The customers also argued that the options agreement was void under the doctrine of fraud in the factum. After the hearing, the court denied Josephthal’s motion, concluding “that the issue is not subject to solution by arbitration” and Josephthal appealed.
The parties agree that the customers are bound by the arbitration clauses contained in the cash account agreements. The parties, however, differ as to whether the arbitration clause is broad enough to cover any disputes arising between the parties. The trial court heard arguments from both sides on this issue and ruled that the issue was not subject to solution by arbitration according to Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998 (11th Cir.1986) (claim of fraud in factum was adequately raised to avoid arbitration by letter from account representative to customers, indicating that customers had opened money market account, as they claimed, rather than securities trading account which had, in fact, been opened for them). However, the trial court never conducted an evidentiary hearing.
We find that since the customers were challenging the making of the agreement that contained the arbitration clause, the court erred in not holding an evidentiary hearing to determine the validity and scope of the arbitration agreements and to consider the customers’ claims of fraud in the factum. See Birchtree Financial Servs., *99 Inc. v. Lance, 561 So.2d 8 (Fla. 2d DCA 1990). We accordingly reverse and remand for an evidentiary hearing.

. The arbitration clause provides in pertinent part:
9. Arbitration—
It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum when such a waiver would be void under the federal securities laws. The undersigned agrees, and by carrying an account for the undersigned you agree, that except as inconsistent with the foregoing sentence, all controversies which may arise between us concerning any transactions or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.